**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
)
IN RE CONTEMPT FINDING IN        )
)    Misc. No. 09-mc-273 (EGS)
*UNITED STATES v. STEVENS*        )
)
_____)


<u>**MEMORANDUM OPINION**</u>


Pending before the Court is Patty Merkamp Stemler's motion
to vacate this Court's February 13, 2009 contempt finding in
*United States v. Theodore F. Stevens*.[1]  On that date, the Court
held Ms. Stemler and two other senior government attorneys in
contempt for violation of the Court's January 21, 2009 Order to
produce certain information to the Court and to the defendant,
Senator Stevens.  Upon consideration of Ms. Stemler's motion,
the accompanying memorandum of law and supporting declarations,
the entire record in the *Stevens* case, and for the reasons set
forth in this Memorandum Opinion, the Court concludes that the
motion to vacate the original contempt finding is **DENIED**.
Nevertheless, because the government later complied with the

_____

[1]  On April 7, 2009, the Court appointed a special prosecutor,
Henry F. Schuelke III, "to investigate and prosecute such
criminal contempt proceedings as may be appropriate against" the
original prosecution team.  Case No. 08-231, Doc. No. 375, Order
of April 7, 2009.  The Court wishes to be clear that Ms. Stemler
was not one of the attorneys identified as part of that
investigation, and this civil contempt finding was unrelated to
the events that led to the appointment of Mr. Schuelke.

Court's January 21, 2009 Order and purged the contumacious conduct, the Court finds that the contempt has been lifted. Moreover, as the Court finds it unnecessary to impose sanctions related to its original contempt finding, there remains nothing more for the Court to resolve and this matter is hereby **DISMISSED.**

## I.    INTRODUCTION

Beginning in December 2008, Ms. Stemler, a senior attorney with the United States Department of Justice ("DOJ"), represented the United States in the *Stevens* case.  During that time, Ms. Stemler, along with several other senior DOJ attorneys, was extensively and directly involved with matters related to a complaint filed by FBI Special Agent Chad Joy, which raised serious allegations of prosecutorial and governmental misconduct in the investigation and trial of Senator Stevens (the "Joy Complaint").

As explained herein, based on the record and Ms. Stemler's own pleadings and declarations, it is undisputed that (i) Ms. Stemler was aware of the Court's January 21, 2009 Order and the government's obligation to produce certain information to the defendant; (ii) she understood that the Order required the government to produce that information to the defendant; and (iii) she knew that the defendant had filed a motion to hold the government in contempt for violating the Court's January 21,

2009 Order.  Nevertheless, at a hearing on February 13, 2009, the government acknowledged that it had not produced the information to the defendant pursuant to the Court's January 21, 2009 Order.  Moreover, the government's attorneys, including Ms. Stemler, offered no excuse or reason for their failure to comply with that Order.  Accordingly, because Ms. Stemler and her colleagues were, in fact, in contempt of the Court on February 13, 2009, the Court will not vacate its original contempt finding.  Ms. Stemler's motion is therefore **DENIED**.

The Court notes, however, that the government did belatedly produce the relevant information to the defendant following the Court's contempt finding, and therefore the contempt has been purged.  *See, e.g.*, *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994) (civil contempt is a coercive tool, and thus a contemnor may purge the contempt by complying with the underlying court order); *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981) (explaining that following the disobedience of a court's order, the court may issue "a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions").  Because the purgation conditions were fulfilled, the Court does not believe that sanctions based on this civil contempt finding are necessary or

3

appropriate in this instance.  *See, e.g.*, *Sheet Metal Workers v.
EEOC*, 478 U.S. 421, 443 (1986) (civil contempt sanctions may be
imposed to compensate the complainant for losses sustained).
Accordingly, the Court will lift the contempt finding as of the
date and time the government complied with the Court's January
21, 2009 Order.  The Court finds that  nothing more remains for
it to do with respect to this contempt finding, and accordingly
this matter is **DISMISSED**.

## II.  DISCUSSION

### A.  Legal Standard for Contempt

As a threshold matter, Ms. Stemler devotes a significant
portion of her memorandum to the argument that this was a
civil, as opposed to a criminal, contempt finding.  As the
Supreme Court has recognized, "whether a contempt is civil or
criminal turns on the character and purpose of the sanction
involved." *Bagwell*, 512 U.S. at 827 (citing *Gompers v. Bucks
Stove & Range Co.*, 221 U.S. 418, 441 (1911)).  As a general
rule, civil contempt is imposed "to compel compliance with an
order of the court[.]" *Cobell v. Norton*, 334 F.3d 1128, 1145
(D.C. Cir. 2003) (citing *Bagwell*, 512 U.S. at 828).  Contempt
is civil, therefore, "if the contemnor is able to purge the
contempt and obtain his release by committing an affirmative
act[.]" *Id.* at 1147 (citing *Bagwell*, 512 U.S. at 828).  "By
contrast, criminal contempt is used to punish, that is, to

4

vindicate the authority of the court following a transgression rather than to compel future compliance." *Id*. at 1145 (internal quotation omitted). With criminal contempt, "the contemnor cannot avoid or abbreviate [the punishment] through later compliance." *Bagwell*, 512 U.S. at 829. With this legal framework in mind, the Court agrees that its February 13, 2009 contempt finding was civil in nature, as it was imposed to compel the government to comply with its January 21, 2009 Order to provide the defense with the information related to Agent Joy's whistleblower status and/or protection.

### B.    Background

A comprehensive recitation of the pre-trial, trial, and post-trial proceedings in the *Stevens* case is not necessary for resolution of the instant motion. The Court has previously spent a great deal of time recounting much of the relevant background in a number of written opinions and orders, including the Court's (i) December 19, 2008 Memorandum Opinion and Order; (ii) December 22, 2008 Order; (iii) January 14, 2009 Order; (iv) January 16, 2009 Opinion and Order; (v) January 21, 2009 Opinion and Order; and (vi) February 3, 2009 Order.[2] Much of the

---

[2]    Unless otherwise specified, all references to pleadings, proceedings, hearings, opinions, and orders relate to the case of *United States v. Theodore F. Stevens*, Case No. 08-231, and can be found on that case's docket.

following summary is taken from those opinions and orders, which provide more detail and are incorporated herein by reference.

### 1. The Joy Complaint and the Government's Efforts to Seal It

On October 27, 2008, following a five-week jury trial marred by repeated allegations of discovery violations and prosecutorial misconduct, Senator Stevens was convicted of making false statements, based on charges that he failed to report certain gifts on his Senate Financial Disclosure Forms. On December 11, 2008, the government filed a "sealed memorandum," along with a motion to file *ex parte* and a motion to seal, notifying the Court that on December 2, 2008, the government's attorneys in the case had received a copy of a "self-styled whistleblower complaint" authored by an FBI Special Agent with extensive knowledge of the investigation and trial of Senator Stevens. Doc. No. 300, Sealed Memorandum, Dec. 11, 2008.[3] The complaint raised allegations of misconduct by certain government employees involved with the investigation and prosecution of Senator Stevens.

In its motion, the government represented to the Court that it initially received the complaint on December 2, 2008 and over

_____

[3] Because the government repeatedly insisted on filing many of its pleadings under seal in the *Stevens* case, the dates on the docket for many of the pleadings do not reflect the actual dates on which those documents were filed, but instead reflect the date that those pleadings were docketed after the Court ordered that they be placed on the public docket.

the course of the following days "received additional information, guidance and advice to satisfy itself that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed, and would not prohibit a disclosure to the Court at a minimum." Doc. No. 300 at 2. Based on whistleblower and privacy concerns, the government sought to seal the Agent's complaint, and to keep much of the complaint's content from the defense. Senator Stevens strenuously objected to sealing the complaint and insisted that he was entitled to access its contents in their entirety.

On December 19, 2008, following briefing on the government's motion, the Court held a sealed hearing. The hearing was attended by government counsel, including Ms. Stemler, and defense counsel, as well as counsel for the FBI Special Agent who had authored the complaint. Doc. No. 315, Transcript of Hearing, Dec. 19, 2008. Throughout the hearing, Brenda Morris, who spoke on behalf of the government, repeatedly referred the Court to the Agent's attorney, and in addressing the Court, the Agent's attorney repeatedly urged the Court to seal the complaint based on the Agent's desire for "whistleblower protection." Doc. No. 315 at 38, 42. Later that day, the Court issued a lengthy Memorandum Opinion and Order, carefully balancing what the Court understood to be

whistleblower and privacy concerns of the government and the Agent on the one hand, with the defendant's constitutional rights on the other.  In that Memorandum Opinion and Order, the Court directed the government to provide an unredacted copy of the complaint to the defendant, and further directed that a redacted copy of the complaint be filed on the public docket. Doc. No. 255, Memorandum Opinion & Order at 2.

>    **2.    The Court's Orders to Produce Information Related to Agent Joy's Whistleblower Status and/or Protection**

On January 14, 2009, the government initiated a call to chambers, with defense counsel on the line, to request that it be permitted to file on the public docket a copy of the complaint with fewer redactions.  The reason given for the government's request was that in responding to the defendant's post-trial motions, the government found it cumbersome not to refer to various individuals identified in the complaint by name.[4]

The Court scheduled a hearing for later that day, in order to hear arguments related to the government's request.  At the hearing, in response to a question from the Court, the government acknowledged that the author of the complaint, Agent

---

[4]    Ironically, the government rejected this very same argument in December, when Senator Stevens argued that sealing the identities of the individuals named in the Joy Complaint would cause confusion and restrict his ability to make persuasive arguments about the information contained in the complaint.

Chad Joy, had not been granted whistleblower protection by the Office of the Inspector General. *See* Doc. No. 282, Transcript of Status Hearing, Jan. 14, 2009 at 8. In response to a follow-up question by the Court, the government then revealed to the Court – for the first time – that Agent Joy had been notified as early as December 4, 2008, that he had not been afforded whistleblower protection. *See* Doc. No. 282 at 16-17. That notification came at least seven days before the government filed its motions to file *ex parte* and to seal the complaint – seven days when, according to the prosecution, it was receiving "additional information, guidance and advice to satisfy itself that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed" – and fifteen days before the hearing, at which government counsel sat by while Agent Joy's counsel urged the Court to seal the complaint based on Agent Joy's desire for whistleblower protection. Doc. No. 300 at 2. Later that day, the Court issued an Order stating that:

> Based on the government's repeated representations, this
> Court and the defendant proceeded on the understanding that
> Agent Joy had whistleblower protection or that his status
> as a whistleblower was at yet undecided due to the ongoing
> investigation by [the Office of Inspector General] and/or
> [the Office of Professional Responsibility]. Had the Court
> known [on December 19, 2008] that the government had
> already legally determined that Agent Joy was not entitled
> to whistleblower protection *by the time it first filed the
> complaint under seal*, the Court would have proceeded
> differently.

Doc. No. 261, Order of Jan. 14, 2009 at 4.

As a result of the government's revelation, the Court ordered the Attorney General to sign a declaration under oath to be filed by no later than noon on January 16, 2009, and provide all relevant correspondence, detailing precisely who within DOJ knew about the Joy Complaint, when they knew about the Joy Complaint, and addressing all decisions and communications within DOJ related to Agent Joy's status as a whistleblower and the determination that he was not entitled to whistleblower protection. Doc. No. 261 at 4-5.

On January 15, 2009, the government filed a motion for reconsideration, authored by Ms. Stemler, asserting that the government had been "mistaken" at the January 14, 2009 hearing, and arguing that the Court should vacate its January 14, 2009 Order based on the presumption against compelling high Executive Branch officials to provide testimony in law enforcement proceedings absent exceptional circumstances. *See* Doc. No. 264, Government's Motion for Reconsideration at 1, 5. On January 16, 2009, the Court denied in part and granted in part the government's motion for reconsideration, and modified its previous Order to require that the Attorney General or his designee(s) provide the required declaration(s) and supporting documentation, and extended the time for filing the

declaration(s) to 5:00 p.m. on January 17, 2009.  *See* Doc. No. 268, Opinion and Order, Jan. 16, 2009 at 11-12.

On January 16, 2009, the government filed in the U.S. Court of Appeals for the District of Columbia Circuit a Petition for Writ of Mandamus and Emergency Motion for a Stay of the District Court's Orders Dated January 14, 2009 and January 16, 2009, authored by Ms. Stemler.  *See* Petition for a Writ of Mandamus and Emergency Motion for a Stay, *In re Michael B. Mukasey*, No. 09-3005 (D.C. Cir. Jan. 16, 2009).  Senator Stevens opposed the government's motion.  *See* Brief of Senator Stevens*, In re Michael B. Mukasey*, No. 09-3005 (D.C. Cir. Jan. 17, 2009).  On January 17, 2009, the Court of Appeals issued an administrative stay "to give the court sufficient opportunity to consider the merits of the motion for stay and petition for writ of mandamus."  *In re Michael B. Mukasey*, No. 09-3005 (D.C. Cir. Jan. 17, 2009).

On January 21, 2009, recognizing that in view of the stay, the change in Administration would occur before the government was required to comply with the Court's January 16, 2009 Order, and concerned with the potential for further delay caused by the change in personnel at DOJ associated with the change in Administration, the Court vacated the January 16, 2009 Order.[5]

_____

[5]    As this recitation of events makes clear, the Court was at all times cognizant of the time-sensitive nature of these

After setting out at length the reasons for the Court's Orders and the series of government misstatements and misrepresentations that had occurred with respect to the Joy Complaint, the January 21, 2009 Order directed

> that the government produce all communications to, from, or between anyone in [the Office of Public Integrity ("OPI")], and any other office within DOJ, including but not limited to the [Office of Inspector General ("OIG")], [Office of Professional Responsibility ("OPR")], the FBI, and the U.S. Attorney's Office for the District of Alaska, between November 15, 2008 and the present, regarding the complaint filed by Agent Joy, be filed under seal with the Court, with a copy provided to the defendant pursuant to the protective order already in place in this case, by no later than January 30, 2009.

Doc. No. 274, Opinion and Order of Jan. 21, 2009 at 18. The Court further clarified that it was only requiring the government to produce communications regarding the Joy Complaint that included anyone in OPI. Doc. No. 274 at 18 n.4. On January 22, 2009, in view of the Court's January 21, 2009 Order, the government withdrew its petition of mandamus and emergency motion for a stay as moot. *See* Notice of Withdrawal of the Petition for a Writ of Mandamus and Emergency Motion for a Stay as Moot, *In re Michael B. Mukasey*, No. 09-3005 (Jan. 22, 2009).

On January 30, 2009, the government submitted a memorandum in response to the Court's January 21, 2009 Order. The

proceedings. Senator Stevens was convicted at the age of 84 and revelations after the trial raised serious grounds for his requests for post-trial relief. The Court recognized the defendant's interest in having those issues briefed and then promptly resolved by the Court.

government made its submission and its document production

required by the January 21, 2009 Order *in camera* and *ex parte*

"because, in the process of gathering all potentially responsive

materials and information, it [had] become apparent that

compliance would require the production of substantial amounts

of privileged and work-product protected materials."  Doc. No.

285, Government's Submission in Response to Jan. 21, 2009 Order

at 13.  The submission was signed by Ms. Stemler, Mr. Welch, and

Ms. Morris, respectively.  *See* Doc. No. 285 at 15.  The

government provided the defendant only a heavily-redacted

version of the memorandum, and did not provide any documents to

the defendant.

### 3.  Senator Stevens' Motion to Dismiss or for a New Trial, or in the Alternative, Motion to Hold Government in Contempt for Violating the Court's January 21, 2009 Order

On February 2, 2009, Senator Stevens filed a Motion to

Dismiss or for a New Trial, or in the Alternative, Motion to

Hold Government in Contempt for Violating the Court's January

21, 2009 Order.  *See* Doc. No. 287, Senator Stevens' Motion to

Dismiss, for a New Trial, or Motion to Hold Government in

Contempt.  The defendant argued that the government had violated

the Court's January 21, 2009 Order by (i) improperly narrowing

the scope of the Court's Order; and (ii) failing to produce any

documents to the defense, despite the Court's clear order to do

so.  In response to these violations, and based on the extensive
record of government misstatements throughout the course of the
case, the defendant urged the Court to use its supervisory
powers to dismiss the indictment.  *See* Doc. No. 287 at 7.  In
the alternative, the defendant argued that the Court should hold
the government in contempt and impose an appropriate remedy.
*See* Doc. No. 287 at 11.

On February 3, 2009, the Court ordered the government to
file a response to the defendant's motion by no later than
February 9, 2009, and to include a detailed privilege log for
each communication it was seeking to withhold, including points
and authorities in support of its position that a communication
is privileged and/or protected by the work product doctrine.
*See* Doc. No. 281, Order, Feb. 3, 2009 at 3.  The Court further
ordered that the government's redacted submission and the
defendant's motion be filed on the public docket.  Doc. No. 281
at 4.  Finally, the Court ordered the government to file a
supplemental submission with a declaration from an official with
oversight for the Civil Division at DOJ and any and all relevant
communications between attorneys in the Civil Division and
attorneys within the Public Integrity Section or the Appellate
Section of the Criminal Division, by no later than February 9,
2009.  Doc. No. 281 at 5.  As the Court explained, a review of
the government's memorandum, declarations, and communications

14

submitted on January 30, 2009, made clear that "(1) the Civil Division was consulted with respect to Agent Joy's whistleblower status and/or protection and (2) that Ms. Stemler, Chief of the Appellate Section, was directly involved in communications with the Civil Division and was relating those communications to Mr. Welch." Doc. No. 281 at 5. Therefore, the Court's February 3, 2009 Order concluded that a declaration from the appropriate official in the Civil Division and all copies of the relevant written communications was required by the Court's January 21, 2009 Order. *See* Doc. No. 281 at 5.

On February 9, 2009, the government filed its Consolidated Response to the Court's February 3, 2009 Order and to the Defendant's Motion to Dismiss or for a New Trial, or in the Alternative, Motion to Hold the Government in Contempt. *See* Doc. No. 292, Government's Consolidated Response to the Court's Feb. 3, 2009 Order and to Defendant's Motion to Dismiss, for a New Trial, or to Hold Government in Contempt. That submission was signed by Ms. Stemler, Mr. Welch, and Ms. Morris, respectively. *See* Doc. No. 292 at 18. The response included a privilege log. For approximately thirty-three documents on the privilege log, no reason or justification for withholding the document appeared on the log.

**4.    The Court's Finding That the Government's
        Attorneys Were in Contempt for Failure to Comply
        with the January 21, 2009 Order**

On February 13, 2009, the Court held a status hearing to
discuss further proceedings in the case.  During that hearing,
Mr. Welch informed the Court that a new member of the
government's team, Kevin Driscoll, was the government's "work
product expert."  Doc. No. 412, Transcript of Status Hearing,
Feb. 13, 2009 at 5.  In response to that information, the Court
questioned Mr. Driscoll regarding the government's assertion of
work product protection in its response to the Court's January
21, 2009 Order.  *See* Doc. No. 412 at 6.  As part of that
discussion with the parties, the Court asked the government
about the approximately thirty-three documents for which the
government had not claimed any work-product protection, and
whether those documents had been produced to the defendant.  *See*
Doc. No. 412 at 10.  Mr. Driscoll replied that they had not.
*See* Doc. No. 412 at 10.

Upon learning that those documents had not been produced to
the defendant, despite the fact that the government had not made
any claim of privilege with respect to those documents, and
despite the Court's January 21, 2009 Order that those documents
be produced to the defendant, the Court asked why they had not
been produced.  *See* Doc. No. 412 at 10.  When the government
responded that it did not have a reason for not producing those

documents, notwithstanding the Court's order to do so, the Court

held Ms. Morris, Mr. Welch, Mr. Driscoll, and Ms. Stemler in

contempt.[6]  *See* Doc. No. 412 at 11-12.  Contemporaneous with the

contempt finding, the Court also set forth the means by which

the attorneys could purge themselves of contempt:  "I want those

documents turned over today before the close of business, and my

interpretation of the close of business is five o'clock."  Doc.

No. 412 at 11-12.

### 5.    The Government's New Team of Attorneys and Its Motion to Set Aside the Verdict and Dismiss the Indictment with Prejudice

On February 16, 2009, the government filed a notice with

the Court explaining that (1) it had determined to produce all

of the relevant communications to the defendant, notwithstanding

any claims of work-product protection; (2) the Public Integrity

Section had been investigating the allegations in the Joy

Complaint, and DOJ was gathering all of the 302s and signed

affidavits created in the course of that investigation, and

would produce those documents to the defendant by February 24,

---

[6]     The following day, the Court issued a Minute Order
informing the parties that the Court would not hold Mr. Driscoll
in contempt.  The Court noted that Mr. Driscoll did not sign the
relevant pleadings, had not filed a notice of appearance in the
case, appeared to have been brought in by his supervisors only
recently for the limited purpose of addressing a discrete issue,
and therefore that it was the three supervisory attorneys, and
not Mr. Driscoll, who bore the responsibility to ensure that the
government complied with the Court's Orders.  *See* Minute Order,
Feb. 14, 2009.

2009; and (3) that Mr. Welch and Ms. Morris, as well as the other government trial attorneys in the case, would no longer conduct litigation relating to allegations of misconduct in the *Stevens* case.  *See* Doc. No. 295, Notice of Production of Documents, Intention to Produce Additional Documents, and Appointment of New Counsel for the United States at 1-2.  The government's submission informed the Court that Mr. Paul O'Brien, Mr. David Jaffe, and Mr. William Stuckwisch would be entering their appearances and representing the government in the litigation related to any claims of misconduct in the *Stevens* case.  *See* Doc. No. 295 at 2.  Finally, the submission stated that the Appellate Section would continue to provide legal support to the new prosecution team.  *See* Doc. No. 295 at 2-3.

On April 1, 2009, the new team of government attorneys filed a Motion to Set Aside the Verdict and Dismiss the Indictment with Prejudice.  *See* Doc. No. 324, Government's Motion to Set Aside the Verdict and Dismiss the Indictment with Prejudice.  In that motion, they informed the Court that the prosecution team had failed to produce relevant information to the defense that the defendant could have used to cross-examine the government's key witness and in arguments to the jury that Senator Stevens was not guilty.  *See* Doc. No. 324 at 1-2.  The motion further informed the Court that "given the facts," a new

trial would be in the interests of justice, but that "based on the totality of circumstances and the interests of justice," the government would not seek a new trial.  Doc. No. 324 at 2. Therefore the government requested that the Court set aside the verdict and dismiss the case with prejudice.  *See* Doc. No. 324 at 2.

On April 7, 2009, the Court held a hearing on the government's motion.  During that hearing, Mr. O'Brien acknowledged that the prosecution team had violated their discovery obligations, including the Court's instructions and their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Doc. No. 374, Transcript of Motion Hearing, April 7, 2009 at 13-14.

On April 7, 2009, the Court granted the government's motion, set aside the verdict, and dismissed the indictment of Senator Stevens with prejudice.  *See* Doc. No. 372, Order, April 7, 2009.

### C.   ANALYSIS

#### 1.   Ms. Stemler's Participation in the Conduct that Led to the Contempt Finding

Ms. Stemler argues that the Court should vacate the contempt finding as to her, because she did not participate in the contumacious conduct.  Specifically, Ms. Stemler contends that she was not responsible for the "underlying collection,

logging, and production of documents in this case," and instead that her role was first, to "research and brief specific legal issues . . . and to prepare the case for its likely appeal; and second, to consult on difficult questions of law[.]" Memorandum in Support of Motion to Vacate Finding of Contempt ("Stemler Mem.") at 15-16. These arguments are unavailing and belied by the record.

While the traditional role of the Appellate Section in the usual criminal case in typical post-trial proceedings may be removed from the day-to-day trial court proceedings, as the above discussion indicates, this was not the usual criminal case, these were not typical post-trial proceedings, and Ms. Stemler's role in this case was not a traditional one. To the contrary, over the course of less than four weeks, Ms. Stemler appears to have been the lead or sole author of at least five substantive pleadings – three of which were filed in the District Court – and her communications with the prosecution team members going back to their initial receipt of the Joy Complaint were directly at issue in the matter before the Court.

> **2. Ms. Stemler's Knowledge of the Court's January 21, 2009 Order Requiring the Government to Produce Certain Documents**

Ms. Stemler argues that she had no responsibility for the management of documents in the *Stevens* case "and had no reason to inquire into the production of documents beyond the inclusion

of her own responsive emails." Stemler Mem. at 16. The Court
finds this argument unpersuasive for several reasons.

First, it is undisputed that the Court ordered the
government to provide the Court and the defendant with certain
documents and information, in order to determine what the
government knew about Agent Joy's whistleblower status and
protection. Given Ms. Stemler's extensive involvement in the
circumstances surrounding the Joy Complaint, the fact that she
was not personally responsible for directly handing the
documents to defense counsel does not mean that she did not have
an obligation to ensure that the documents were produced. To
the contrary, the Court finds that each of the senior attorneys
representing the government had an obligation to comply with the
Court's Order, and to ensure that their client complied with the
Court's Order.[7]

Second, Ms. Stemler acknowledges that she *did* inquire about
the "blank spaces next to approximately thirty or so entries on
the privilege log[,]" that she was told that the government was

---

[7] If the Court was to adopt Ms. Stemler's argument, senior
attorneys would never be subject to contempt for failure to
comply with a Court order to do a certain act, provided they
could point to a more junior attorney, who may have no decision-
making authority, but may have the technical or administrative
responsibility for carrying out the act itself. Such a result
is counter to the coercive nature of the contempt power, *see*
*Bagwell*, 512 U.S. at 827, as it would subject to contempt only
those attorneys with the least decision-making authority, *i.e.*,
attorneys least likely to be in a position to ensure compliance.

withdrawing its claim of privilege with respect to those documents, and that based upon that information, "Ms. Stemler understood that Public Integrity would produce those thirty or so documents to the defendant." Stemler Mem. at 9-10. In other words, although Ms. Stemler knew and understood that those documents were to be produced, she took no steps to ensure that a production was made.

Third, Ms. Stemler argues that her absence from the counsel table at the February 13, 2009 hearing "reflected the supporting role she played as a legal advisor for the prosecution." Stemler Mem. at 17. The Court also finds this argument unavailing. From the outset, Ms. Stemler was extensively involved with the matters related to the Joy Complaint and the government's representations to the Court regarding that complaint. In fact, Ms. Stemler sat at counsel table at the December 19, 2008 hearing on the Joy Complaint – the hearing that set the events in motion that ultimately led to the Court's January 21, 2009 Order to produce the documents. *See* Doc. No. 315, Transcript of Hearing at 1, 3. In addition, as has been discussed *supra*, Ms. Stemler gathered information regarding Agent Joy's whistleblower status and relayed that information to Mr. Welch. *See, e.g.*, Doc. No. 281, Order, Feb. 3, 2009 at 5. Moreover, Ms. Stemler appears to have been the lead or sole author of no fewer than five substantive pleadings related to

the subject of the Court's January 21, 2009 Order.  It cannot be said, therefore, that Ms. Stemler played only a marginal role in the events that led to the Court's contempt finding.

> **3. Ms. Stemler's Notice That the Government Could be Held In Contempt for Failure to Comply with the Court's Order**

Finally, Ms. Stemler argues that she had "no notice that the Court was disposed toward holding her in contempt if the government did not produce those thirty-two emails prior to the hearing[.]"  Stemler Mem. at 22.  This argument is without merit.  The defendant had filed a motion to hold the government in contempt for not producing the documents required by the Court's January 21, 2009 Order.  *See* Doc. No. 287.  In fact, Ms. Stemler herself appears to have authored the government's response to that motion.  *See* Doc. No. 292 at 18.  Moreover, Ms. Stemler admits that she understood that pursuant to the Court's January 21, 2009 Order, the documents for which the government was not claiming privilege had to be produced to the defendant. *See* Stemler Mem. at 10; Declaration of Patty Merkamp Stemler ("Stemler Decl.") at ¶ 30.  In other words, Ms. Stemler knew what had been ordered and she knew there was a specific request by the defendant to hold the government in contempt for non-compliance.  The Court, therefore, finds that Ms. Stemler had sufficient notice that she could be held in contempt if the

government failed to comply with the Court's January 21, 2009 Order.

## III. CONCLUSION

As set forth above, it is undisputed that (i) Ms. Stemler was aware of the Court's January 21, 2009 Order and the government's obligation to produce certain information to the defendant; (ii) Ms. Stemler understood that the government had an obligation to produce that information to the defendant; and (iii) Ms. Stemler knew that the defendant had filed a motion to hold the government in contempt for violating the Court's January 21, 2009 Order.

The record establishes that Ms. Stemler, a senior DOJ attorney with supervisory responsibilities, played a significant and extensive role in the events leading to the Court's January 21, 2009 Order. Her involvement in determining and shaping the government's representations to the Court and to the defendant regarding Agent Joy's whistleblower status and/or protection began in December 2008 and continued through the weeks of briefings and hearings that ultimately led to the Court's February 13, 2009 finding that Ms. Stemler, Mr. Welch, and Ms. Morris were in civil contempt for their failure to comply with the Court's January 21, 2009 Order. Accordingly, the Court finds that Ms. Stemler participated in the contumacious conduct

and therefore **DENIES** Ms. Stemler's Motion to Vacate the Finding

of Contempt.

    As Ms. Stemler correctly points out, however, the

government's belated production of all documents required by the

Court's January 21, 2009 Order "mooted any need for coercion."

Stemler Mem. at 23. The Court therefore finds that the contempt

has been purged, and finds it appropriate to lift the contempt

finding of February 13, 2009 as of the date and time at which

the government complied with the January 21, 2009 Order.[8] *See,*

*e.g.*, *United States v. Harris*, 582 F.3d 512, 514 n.2 (3rd Cir.

2009) (lifting orders of contempt when contemnors became

compliant with the court order); *United States v. Philip Morris*,

220 F.R.D. 109, 112 (D.D.C. 2004) (lifting contempt as of date

contemnor purged the contempt); *United States v. Berlin*, Case

No. 06-mc-170, Order, Doc. No. 37 (D.D.C. Dec. 4, 2006) (Hogan,

J.) (same). Accordingly, Ms. Stemler, Mr. Welch, and Ms. Morris

are no longer in contempt for their violation of the Court's

January 21, 2009 Order. As there remains nothing more for the

---

[8]    While the Court is aware that the government complied with
the January 21, 2009 Order on February 13, 2009, it is unclear
to the Court exactly what time the compliance occurred. *See*
Stemler Decl. ¶¶ 36, 37 ("After the hearing, in the afternoon of
February 13, 2009, . . . I . . . ask[ed] that Public Integrity
produce the emails as soon as possible and that I be copied on
any production. I received confirmation later that day that
Public Integrity (specifically, Nicholas Marsh and Marc Levin)
had produced to the defendant the emails without log entries, as
well as the additional redacted emails, and that Mr. Levin had
notified the Court of that production.").

Court to do with respect to the contempt finding, this matter is

hereby **DISMISSED**.


**Signed:**    **Emmet G. Sullivan**
          **United States District Judge**
          **October 12, 2010**